SYDNEY MANDLER AND ELAINE S. MANDLER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

SANDOR SPECTOR AND ELAINE R. SPECTOR, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 1698-71, 1699-71.     Filed December 18, 1975.

*S. Zachary Samuels* and *Martin S. Stolzoff,* for the petitioners.
*G. W. McDonald,* for the respondent.

OPINION

The first question to be decided is whether coin-operated washers and dryers purchased and placed by Wesrod in apartment

houses and trailer parks during 1966, 1967, and 1968 were "section 38 property" on which an investment credit was allowable. Wesrod is a subchapter S corporation, and as such section 48(e) requires that the investment credit of Wesrod, if any, be apportioned pro rata among its shareholders on the last day of the corporation's taxable year.

"Section 38 property" is defined generally to include depreciable tangible personal property. Sec. 48(a)(1.).[4] However, section 48(a)(3)[5] specifically excludes from "section 38 property" property "used predominantly to furnish lodging or in connection with the furnishing of lodging." This exclusion does not apply to "nonlodging commercial facilities which are available to persons not using the lodging facilities on the same basis as they are available to persons using the lodging facilities." Sec. 48(a)(3)(A).

Petitioners argue that the coin-operated washers and dryers that Wesrod installed in apartment houses and trailer parks fall within the exclusion to section 48(a)(3) provided in subsection

---

[4] Sec. 48(a)(1) as in effect for the years in issue provided:

(1) IN GENERAL.—Except as provided in this subsection, the term "section 38 property" means—

(A) tangible personal property, or

(B) other tangible property (not including a building and its structural components) but only if such property—

(i) is used as an integral part of manufacturing, production, or extraction or of furnishing transportation, communications, electrical energy, gas, water, or sewage disposal services, or

(ii) constitutes a research or storage facility used in connection with any of the activities referred to in clause (i), or

(C) elevators and escalators, but only if—

(i) the construction, reconstruction, or erection of the elevator or escalator is completed by the taxpayer after June 30, 1963, or

(ii) the elevator or escalator is acquired after June 30, 1963, and the original use of such elevator or escalator commences with the taxpayer and commences after such date.

Such term includes only property with respect to which depreciation (or amortization in lieu of depreciation) is allowable and having a useful life (determined as of the time such property is placed in service) of 4 years or more.

[5] Sec. 48(a)(3) as in effect for the years in issue provided:

(3) PROPERTY USED FOR LODGING.—Property which is used predominantly to furnish lodging or in connection with the furnishing of lodging shall not be treated as section 38 property. The preceding sentence shall not apply to—

(A) nonlodging commercial facilities which are available to persons not using the lodging facilities on the same basis as they are available to persons using the lodging facilities, and

(B) property used by a hotel or motel in connection with the trade or business of furnishing lodging where the predominant portion of the accommodations is used by transients.

(A) thereof, and therefore the washers and dryers are "section 38 property" subject to the investment credit, and we agree.

Regulations section 1.48-1(h)(1)(i) provides that "Property used in the living quarters of a lodging facility, including beds and other furniture, refrigerators, ranges, and other equipment, shall be considered as used predominantly to furnish lodging." Subsection (ii) of section 1.48-1(h)(1) states that:

(ii) Property which is used predominantly in the operation of a lodging facility or in serving tenants shall be considered used in connection with the furnishing of lodging, whether furnished by the owner of the lodging facility or another person. Thus, for example, lobby furniture, office equipment, and laundry and swimming pool facilities used in the operation of an apartment house or in serving tenants would be considered used predominantly in connection with the furnishing of lodging. However, property which is used in furnishing, to the management of a lodging facility or its tenants, electrical energy, water, sewage disposal services, gas, telephone service, or other similar services shall not be treated as property used in connection with the furnishing of lodging. Thus, such items as gas and electric meters, telephone poles and lines, telephone station and switchboard equipment, and water and gas mains, furnished by a public utility would not be considered as property used in connection with the furnishing of lodging.

Paragraph (2) of regulations section 1.48-1(h) reads in pertinent part as follows:

(2) *Exceptions*—(i) *Nonlodging commercial facility.* A nonlodging commercial facility which is available to persons not using the lodging facility on the same basis as it is available to the tenants of the lodging facility shall not be treated as property which is used predominantly to furnish lodging or predominantly in connection with the furnishing of lodging. Examples of nonlodging commercial facilities include restaurants, drug stores, grocery stores, and vending machines located in a lodging facility.

The respondent contends that the laundry equipment in issue is not "section 38 property" because, in the language of regulations section 1.48-1(h)(1)(ii), "laundry * * * facilities used in the operation of an apartment house or in serving tenants would be considered used predominantly in connection with the furnishing of lodging." Petitioners assert that if that is the end of it, the regulation is invalid. Petitioners contend, however, that their equipment comes within the exception to property "used predominantly to furnish lodging" provided in paragraph (2) of the regulation, namely, "nonlodging commercial facilities" like "restaurants, drug stores, grocery stores, and vending machines located in a lodging facility."

Respondent does not argue that the facilities in question were not "commercial." Clearly petitioners operated them for profit.

We have found as a fact that the laundry facilities were available to persons not using the lodging facilities (here apartment buildings and trailer parks) on the same commercial basis as they were available to tenants. It is not necessary for petitioners to prove that the public actually used its laundry facilities. As we stated in *Klingle Corp.,* 29 T.C.M. 603, 608, 39 P-H Memo. T.C. par. 70,135, p. 70-674 (1970), affd. (D.C. Cir. 1971, 29 AFTR 2d 72-438, 72-1 USTC par. 9154), "the commercial facility itself (together with its component parts) was not to be considered property used 'in connection with the furnishing lodging' even if no one other than the tenants of the apartment building patronized the facility as long as the facility was available to persons other than tenants on the same basis as to the tenants."

The close question is whether these laundry facilities were "nonlodging" facilities. The regulations may be read to imply that laundry facilities are at least in some cases lodging facilities. As a practical fact, laundry facilities are not always associated with lodgings (as, for example, laundromats), and lodging facilities do not always have laundry facilities. While it is certainly convenient, and not unusual for laundry facilities to be provided in or connected with lodging facilities, that is not always the case.

The rationale for the exception for commercial facilities from the exclusion from the investment credit of lodging facilities was "to place nonlodging commercial facilities located in an apartment building, etc., on an equal competitive basis with similar facilities located elsewhere." H. Rept. No. 1447, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 405, 416. Thus, if Wesrod's coin-operated washers and dryers located in apartment houses and trailer parks were competing with laundromats, and it appears that they were, it would best effectuate the legislative intent for them to get the same tax treatment. Moreover, the legislative history of the investment credit indicates it should be interpreted liberally when determining whether an investment in a particular type of property qualifies for the credit. S. Rept. No. 1881, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 707, 722; H. Rept. No. 1447, *supra,* 1962-3 C.B. at 415.

In view of the policy behind the legislation, we find that the coin-operated laundry facilities in issue were "nonlodging" facilities, and that the regulations referring generally to laundry facilities as "lodging" facilities do not apply to commercial facilities which are available to the public.

Subsequent to the years in issue, section 48(a)(3) was amended by adding to the exceptions thereto subparagraph (C) excluding from property used for lodging "coin-operated vending machines and coin-operated washing machines and dryers." Revenue Act of 1971, sec. 104(b), Pub. L. 92-178, 85 Stat. 497, 1972-1 C.B. 443, 445. In connection with this legislation, the Senate Finance Committee gave the following explanation:

*Coin operated machines in lodging facilities.*—Under present law, property used in connection with the furnishing of lodging is not eligible for the credit, unless the property is a nonlodging commercial facility available to persons [not] using the lodging facility on the same basis as it is available to persons using the lodging facility. This has been interpreted to allow the credit for vending machines, but not for coin operated laundry machines, in apartment buildings.

The committee is of the opinion that it is not appropriate to draw a distinction between these two types of coin operated equipment. Furthermore, the operation of the laundry machines in the lodging facility might well be in competition with the operation of similar machines in a local laundromat which would be entitled to the credit with respect to its machines. To remove this inequity the committee has provided that coin operated washing machines and driers, as well as coin operated vending machines generally, are to be eligible for the credit (i.e., are not within the exclusion from eligibility provided in present law for property used to furnish lodging or in connection with the furnishing of lodging).

S. Rept. No. 92-437, 92d Cong., 1st Sess. (1971), 1972-1 C.B. 559, 575-576. Under the effective dates provision, the Senate Finance Committee further explained that with respect to some changes (including those affecting coin-operated machines in apartment buildings) "no inference is intended as to the proper treatment of these types of property under prior law," whereas other changes (with respect to Comsat and railroad track) "are intended as clarifying amendments" and therefore apply retroactively. S. Rept. No. 92-437, *supra,* 1972-1 C.B. at 578.

The Senate Finance Committee's reference to the difference in interpretation between vending machines and coin-operated laundry machines appears to refer to regulations section 1.48-1(h)(2)(i) which specifically included vending machines in

enumerated nonlodging commercial facilities but did not mention coin-operated laundry machines.

In view of the Senate committee report's admonition that the 1971 amendment was not intended to give rise to inferences as to what the law was prior to the amendment with respect to coin-operated laundry equipment, we draw no inference from said amendment (in spite of the parties' urgings that we do so).

We conclude that the equipment in issue was "section 38 property" in the years in issue, and therefore petitioners were entitled to the investment credit claimed in the years in issue.

The second question to be decided is whether petitioners are entitled to investment credit carryovers from 1962, 1963, 1964, and 1965 to 1966, 1967, and 1968. We conclude that they are.

Pursuant to section 46(b)(1), petitioners are allowed an investment credit carryover equal to the amount of the investment credit for any taxable year which exceeds the limitation provided in section 46(a)(2).[6] The investment credit can be carried over to each of the 7 taxable years following the unused credit year and can be carried back only to a taxable year ending after December 31, 1961. Sec. 46(b)(1).

Petitioners have proved that amounts of the allowable investment credit that were available to them in the years 1962, 1963, 1964, and 1965, and the amounts they utilized in each of those years. We have held that petitioners are entitled to investment credit on the coin-operated laundry equipment purchased by Wesrod. Therefore they are entitled to the investment credit carryovers claimed for the years in issue.

*Decisions will be entered under Rule 155.*

---

[6] Sec. 46(a)(1) and (2) provides in relevant part:

(a) DETERMINATION OF AMOUNT.—

(1) GENERAL RULE.—The amount of the credit allowed by section 38 for the taxable year shall be equal to 7 percent of the qualified investment (as defined in subsection (c)).

(2) LIMITATION BASED ON AMOUNT OF TAX.—Notwithstanding paragraph (1), the credit allowed by section 38 for the taxable year shall not exceed—

(A) so much of the liability for tax for the taxable year as does not exceed $25,000,
* * *